UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 20-10640-tmd |
| | § | |
| EF-290, LLC | § | |
| | § | Chapter 11 |
| *Debtor* | § | |

### APPLICATION OF THE DEBTOR FOR AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF THREE TWENTY-ONE CAPITAL PARTNERS, LLC AS INVESTMENT BANKER

**This pleading requests relief that may be adverse to your interests.**

**If no timely response is filed within 21 days from the date of service, the relief requested herein may be granted without a hearing being held.**

**A timely filed response is necessary for a hearing to be held.**

COMES NOW, EF-290, LLC, the debtor and debtor in possession in the above-captioned chapter 11 case ("Applicant" or the "Debtor") and files the instant motion seeking to employ an investment banker to seek out equity infusions and/or buyers for substantially all of the Debtor's assets. Therefore, the Debtor hereby submits this application (the "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2014, authorizing the employment and retention of Three Twenty-One Capital Partners, LLC ("Three Twenty-One" or "3-21"), as investment banker to the Debtor in the chapter 11 case. In support of this Application, the Debtor incorporates the statements contained in the *Declaration of Disinterestedness of Ervin Terwilliger in Support of the Application of the Debtor for an Order Authorizing the Employment and Retention of Three Twenty-One Capital Partners, LLC as*

*Investment Banker* (the "Terwilliger Declaration"), attached hereto as **Exhibit B**, and further respectfully state as follows:

## JURISDICTION AND VENUE

1. The Debtor commended the case by filing a petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in the Western District of Texas because the Debtor's principal place of business is within the District.

2. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a), 363, and 1184 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

4. The Debtor is a family focused entertainment destination offering excitement, food, and fun to its patrons. Established in 2017, EF-290, LLC, opened its doors as "Epic Fun" to the public in 2018 as an indoor arena providing participants a wide variety of activities including bumper cars, indoor rock climbing, laser tag, mini bowling, and axe throwing among many others. The business is located in Southwest Austin and is an attraction for families, schools, and other groups. A more detailed history of the Debtor is discussed in the *Declaration of Stacy Eppen in Support of the Debtor's Chapter 11 Petition and First Day Relief* (the "First Day Declaration") [Docket No. 6], previously filed and incorporated by reference herein.

5. While the Debtor experienced steady improvement in its popularity and revenues unfortunately the Debtor was required to cease operations as a result of the various local, state, and

federal orders and guidelines due to the COVID-19 pandemic. Alongside thousands of other "non-essential" businesses, Debtor was required to shut their doors in March and had no way to replace its stream of income until it could reopen. Debtor had intended to resume operations as soon as was reasonable given the circumstances, however, given the Debtor's liquidity and operational crisis, 3-21 was engaged by the Debtor directly to provide services during the course of the chapter 11 case. A copy of the engagement letter is attached hereto as **Exhibit C** (the "Engagement Letter").

## BACKGROUND FACTS

6. On May 29, 2020 (the "Petition Date"), the Debtor filed the instant petition. Debtor operates as a debtor-in-possession under Section 1182(2) of the Bankruptcy Code. For a further detailed description of the Debtor, the operations, assets and liabilities, the Debtor respectfully refers the Court and parties-in-interest to the *First Day Declaration of Stacy Eppen*. No request to remove the Debtor as debtor-in-possession has been made.

## RELIEF REQUESTED & BASIS THEREFOR

7. The Debtor seeks entry of an order, substantially in the form filed with this Application (the "Order"), (a) authorizing the Debtor to retain and employ Three Twenty-One Capital Partners, LLC ("Three Twenty-One" or "3-21") as their investment banker, pursuant to the terms of the engagement letter by and between the Debtor and 3-21, dated as of June 23, 2020 (the "Engagement Letter"), a copy of which is attached as Exhibit C herein and granting related relief. The Debtor submits the Terwilliger Declaration in support of this Application.

8. The Debtor seeks approval of the retention and employment of Three Twenty-One pursuant to sections 327(a) and 328(a) of the Bankruptcy Code. Section 328(a) provides, in relevant part, that a debtor in possession, "with the court's approval, may employ or authorize the

employment of a professional person under section 327…on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 327(a) of the Bankruptcy Code, in turn, authorizes a debtor in possession to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a).

9. Section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co.* (*In re Nat'l Gypsum Co.*), 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (internal citations and emphasis omitted).

10. The Court's approval of the Debtor's retention of Three Twenty-One in accordance with the terms and conditions of the Three Twenty-One Engagement Letter is warranted. As stated herein, Three Twenty-One satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code. Three Twenty-One is needed post-petition to market the Debtor and its assets for an equity infusion or sale transaction for part of, or substantially all of, the Debtor's assets, which will undoubtedly include negotiations and providing expert advice.

11. Three Twenty-One has extensive experience and an excellent reputation in

providing high-quality investment banking and distressed situations advisory services to debtors and creditors in bankruptcy reorganizations, mergers and acquisitions, and other restructurings. The Debtor believes that Three Twenty-One is well-qualified to provide its services to the Debtors in a cost-effective, efficient, and timely manner.

12. Furthermore, as detailed above, Three Twenty-One does not hold or represent an interest materially adverse to the estate and is disinterested.

13. In addition, the Debtor believes that the Fee Structure, as discussed herein, is market-based, fair, and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code. The Fee Structure reflects Three Twenty-One's commitment to the variable level of time and effort necessary to perform the restructuring services, Three Twenty-One's particular expertise, and the market prices for Three Twenty-One's services for engagements of this nature both out of court and in a chapter 11 context. Indeed, the Debtor believes that the Fee Structure appropriately reflects: (a) the nature and scope of services to be provided by Three Twenty-One; (b) Three Twenty-One's substantial experience with respect to investment banking and distressed situations advisory services; and (c) the fee structures typically utilized by Three Twenty-One and other leading investment banks and financial advisors who do not bill their clients on an hourly basis.

*Three Twenty-One's Retention is Critical to the Debtor's Success*

14. The Debtor submits that the retention of Three Twenty-One is in the best interests of all parties in interest in these chapter 11 cases. Three Twenty-One is a preeminent investment banking firm that is intimately familiar with the Debtor's business. Denial of the relief requested herein will deprive the Debtor of the assistance of uniquely qualified investment banking professionals and financial advisors who have served them since June 23, 2020 and have advised

the Debtor with respect to potential transactions.

15. Considering the foregoing, the Debtor submits that the retention of Three Twenty-One is in the best interest of the estate, its creditors, and all parties in interest in the chapter 11 case. The Debtor submits it has satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules to support entry of an order authorizing the Debtor to retain and employ Three Twenty-One in the chapter 11 case on the terms described herein and in the Three Twenty-One Engagement Letter.

### *Qualification of Three Twenty-One Capital Partners*

16. Three Twenty-One Capital Partners is a leading national investment banking and distressed financial advisory firm with offices across the United States from Los Angeles to Maryland. Three Twenty-One provides a broad range of distressed and storied situation advisory services including (a) mergers and acquisitions; (b) recapitalization and restructuring; (c) capital markets advisory; and (d) private funds advisory.

17. Three Twenty-One and its senior professionals have extensive experience in the reorganization, restructuring, marketing, and liquidation of distressed companies in the retail and consumer sectors, both out-of-court and in chapter 11 cases, including providing financial and strategic advice to its clients in cases involving Supershuttle, Furniture Brands International, Tom Jones, Inc. Apex Express, USA Dawgs, Inc. and many others.

18. Three Twenty-Ones' distressed business advisory professionals have served as investment bankers and/or financial advisors in numerous cases, including: *In re Frictionless World, Inc.*, Case No. 19-18459 (Bankr. E.D. CO June 26, 2019); *In re Butler Specialties, Inc. | T/A Butlerbuilt Motorsports*, Case No. 19-50417 (Bankr. E.D. NC Apr. 23, 2019); *In re Yeaman Machine Technologies, Inc.*, Case No. 19-05932 (Bankr. E.D. IL. Mar. 06, 2019); *In re Scandia*

*Packaging Machinery Company*, Case No. 18-18639 (Bankr. E.D.N.J. Apr. 30, 2018); *In re Apex Xpress, Inc.*, Case No. 18-13134 (Bankr. E.D.N.J. Feb. 16, 2018); *In re U.S.A. Dawgs, Inc.*, Case No. 18-10453 (Bankr. E.D. NV Jan. 31, 2018); *In re Furniture Brands International (n/k/a T-A Window, Inc.)*, Case No. 17-32273 (Bankr. E.D. IL Oct. 27, 2017); *In re Troverco, Inc.*, Case No. 17-44474 (Bankr. E.D. MO Jun. 29, 2017); and *In re MedCision, Inc.*, Case No. 17-31272 (Bankr. N.D. CA Dec 20, 2017).

19. The Debtor has selected Three Twenty-One as their investment banker based upon, *inter alia*: (a) Three Twenty-One's extensive knowledge of the Debtor, as described below; (b) the Debtor's need to retain a skilled investment banking distressed business advisory firm; and (c) Three Twenty-One's extensive experience and excellent reputation in providing investment banking and distressed situation advisory services in chapter 11 cases such as the Debtor's. In light of the industry, necessary speed, and expertise of Three Twenty-One, along with Three Twenty-One's resources, capabilities, and industry experience, the Debtor believes that Three Twenty-One is crucial to the Debtor's continued prosecution of its bankruptcy case. An experienced investment banker and distressed situations advisor such as Three Twenty-One fulfills a critical need that complements the services provided by the Debtor's legal professionals. For these reasons, the Debtors require the services of a capable and experienced investment banker and distressed situations advisor such as Three Twenty-One.

20. Throughout Three Twenty-One's engagement, Three Twenty-One provides valuable services to the Debtor in connection with its efforts, including, among others: (i) assisting the Debtor in reviewing and analyzing the Debtor's results of operations, financial condition, and business plans; (ii) assisting the Debtor in reviewing and analyzing restructuring alternatives or capital transactions; (iii) advising and assisting the Debtor in negotiating and raising post-petition

financing; (iv) advising and assisting the Debtor in negotiations with seeking equity infusions and/or the marketing and sale of substantially all of its assets; and (iv) meeting with the Debtor and the Debtor's stakeholders, as appropriate, to discuss the various proposed transactions to ensure that the Debtor received the highest and best value available in the market.

21. Accordingly, the Debtor believes Three Twenty-One is well-qualified to represent them in a cost-effective, efficient, and timely manner, and the Debtor submits that the employment and retention of Three Twenty-One is in the best interests of the Debtor, its creditors, and all parties in interest.

## SERVICES TO BE PROVIDED

22. As of June 23, 2020, Three Twenty-One commenced its engagement with the Debtor to provide investment banking and distressed situations advisory advice and services in connection with a potential equity infusion and/or sale of substantially all of the Debtor's assets. The terms and conditions of the Three Twenty-One Engagement Letter were the result of significant discussions and negotiations between Three Twenty-One and the Debtor, and they reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement. Pursuant to the Three Twenty-One Engagement Letter, Three Twenty-One has and will perform the following services, as requested, for the Debtor:

    a. Work with Debtor to devise the best course of action to effectuate the desired outcome for the Debtor.

    b. Conduct due diligence on Debtor's Business.

    c. Create a marketing plan.

    d. Create financial modeling to aid in the Transaction.

    e. Work with third party professionals and creditors.

    f. Prepare marketing materials, confidential information presentation and

secure due diligence data room which will include information regarding the Business. (Debtor shall have final approval of all materials and their use and prior approval of all prospective purchasers given access to the data room).

g. Endeavor to locate parties who may have an interest in a Transaction with the Debtor.

h. Circulate materials, as appropriate and approved by the Debtor, to facilitate a Transaction.

i. Respond, provide information to, communicate and negotiate with and obtain offers from interested parties and make recommendations to the Debtor as to whether an offer should be accepted.

j. Communicate regularly with the Debtor about the status of 3-21's efforts with respect to the marketing efforts.

k. Recommend to the Debtor the proper method of handling any specific problems encountered with respect to the marketing of the Business.

l. Perform related services necessary to maximize the proceeds to be realized for the Business.

m. 3-21 shall have no authority to bind the Debtor to any agreements or offers.

23. If the Debtor requests that Three Twenty-One perform services not contemplated by the Three Twenty-One Engagement Letter, Three Twenty-One and the Debtor will agree, in writing, on the terms for such services and seek the Court's approval thereof.

## PROFESSIONAL COMPENSATION

28. Three Twenty-One's decision to advise and assist the Debtor in connection with its chapter 11 case is subject to its ability to be retained in accordance with the terms of the Three Twenty-One Engagement Letter pursuant to section 328(a) of the Bankruptcy Code.

29. As set forth more fully in the Three Twenty-One Engagement Letter, Three Twenty-One and the Debtor have agreed on the following terms of compensation and expense reimbursement (the "Fee Structure"):

(a) **Retainer.** Upon entry of the order approving Three Twenty-One as the Debtor's Investment Banker, a retainer of $10,000 (the "Retainer"), payable immediately upon entry of the approval order by the Bankruptcy Court.

(b) **Expenses.** Subject to approval of the U.S. Bankruptcy Court, the Debtor shall promptly pay the deal related expenses (the "Expenses") incurred by 3-21 during the term of this Agreement. Unless otherwise agreed to by the Debtor, Expenses are limited to marketing costs, business services, data room expenses, database services, printing, mailing, and travel-related expenses. If the Debtor is unable to pay the Expenses when due, such unpaid amounts will be paid from the proceeds of a Transaction. In the case of multiple Transactions unpaid Expenses shall be paid from the proceeds of the first Transaction to close.

(c) **3-21 Fee.** Subject to approval of the U.S. Bankruptcy Court, as compensation under this Agreement, and for facilitating a Transaction in accordance with the terms hereof, 3-21 will be paid a fee, in cash, at the Closing of any Transaction (the "Fee") based upon Transaction Value received by Client and computed using the following formula: Seven Percent (7.5%) of all Transaction Value (as defined in the Three Twenty One Engagement Agreement). The Fee shall be the greater of the above calculation or Seventy-Five Thousand Dollars ($75,000). The Fee shall be paid in cash at Closing with respect to any portion of the Transaction Value.

30. As set forth in the Three Twenty-One Engagement Letter, more than one fee and more than one type of fee may be payable to Three Twenty-One under the Three Twenty-One Engagement Letter in connection with any single Transaction or a series of Transactions, and in each case, each such fee will be paid to Three Twenty-One. No fee or compensation payable to any third party by the Debtor or any other person or entity in connection with the subject matter of this engagement will reduce or otherwise affect any fee payable by the Debtor to Three Twenty-One under the Three Twenty-One Engagement Letter.

31. In addition to any fees payable to Three Twenty-One, the Debtors will reimburse Three Twenty-One for all of its reasonable and documented out-of-pocket expenses incurred in

entering into and performing services under the Three Twenty-One Engagement Letter.

32. The Debtor believes the Fee Structure is consistent with, and typical of, compensation arrangements entered into by Three Twenty-One and other comparable firms in connection with the rendering of similar services under similar circumstances, both in and out of bankruptcy proceedings. The Debtor also believes the Fee Structure reflects a balance between a fixed, monthly fee, and a contingency amount, which is tied to the consummation and closing of the transactions and services contemplated by the Debtor and Three Twenty-One in the Three Twenty-One Engagement Letter. The Debtor believes the Fee Structure is reasonable, market-based, and designed to compensate Three Twenty-One fairly for its work.

33. Three Twenty-One's strategic and financial expertise, as well as its capital markets knowledge, financing skills, and restructuring capabilities, some or all of which have and will be required by the Debtor during the term of Three Twenty-One's engagement, were important factors to the Debtor in determining the Fee Structure.

34. The Debtor has not paid Three Twenty-One any during the 90-day period before the Petition Date. As of the Petition Date, the Debtors do not owe Three Twenty-One any fees for services performed or expenses incurred under the Three Twenty-One Engagement Letter.

## THREE TWENTY ONE CAPITAL PARTNERS DISINTERESTEDNESS

35. Three Twenty-One has reviewed the list of parties in interest provided by the Debtor. To the best of the Debtor's knowledge, information, and belief, and except to the extent disclosed herein and in the First-Day Declaration, Three Twenty-One: (a) is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code; (b) does not hold or represent an interest materially adverse to the estates with respect to the matters on

which Three Twenty-One will be employed; and (c) has no connection to the Debtors, the chapter 11 case, their creditors, or their related parties.

36. The Debtor is informed that Three Twenty-One will not share any compensation to be paid by the Debtor in connection with services to be performed after the Petition Date with any other person, other than principals and employees of Three Twenty-One, to the extent required by section 504 of the Bankruptcy Code.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an Order substantially in the form of the Order filed with this Application, granting the relief requested herein, and such other relief as is just and proper.

July 2, 2020

Respectfully submitted,

HAJJAR PETERS LLP

By: /s/*Charlie Shelton*
Charlie Shelton
Bar Number: 24079317
3144 Bee Caves Rd
Austin, TX 78746
(512) 637-4956
(512) 637-4958 (FAX)
cshelton@legalstrategy.com
ATTORNEYS FOR DEBTOR

**CERTIFICATE OF SERVICE**

       This is to certify that a true and correct copy of foregoing motion was served on July 2, 2020, via CM/ECF on all parties requesting such notice. Additionally, on July 2, 2020 or within one business day thereafter, the foregoing application was served on all parties listed below. Additionally, on July 2, 2020 or within one business day thereafter, the Notice of Employment of Professional was served on all parties listed on the attached creditors' matrix who did not receive electronic notice. Exhibits are available upon request.

                                                      /s/*Charlie Shelton*
                                                      Charlie Shelton

| | |
|---|---|
| Robert L. Barrows<br>Warren, Drugan & Barrows, P.C.<br>800 Broadway, Suite 200<br>San Antonio, Texas 78215<br><br>***Counsel for Berkshire Bank***<br><br>*Via email: rbarrows@wdblaw.com* | Kell C. Mercer, P.C.<br>1602 E. Cesar Chavez Street<br>Austin, Texas 78702<br><br>***Counsel for BBD Commercial***<br><br>*Via email: kell.mercer@mercer-law-pc.com* |
| Mike Colvard<br>300 Convent St # 2500<br>San Antonio, TX 78205<br><br>***Subchapter V Trustee***<br><br>*Via email: mcolvard@mdtlaw.com* | EF-290, LLC<br>c/o Dane Eppen and<br>Stacy Eppen<br>7101 W, TX-71 Suite D<br>Austin TX, 78735<br><br>***Debtor*** |

| | | |
|---|---|---|
| Label Matrix for local noticing<br>0542-1<br>Case 20-10640-tmd<br>Western District of Texas<br>Austin<br>Thu Jul  2 18:06:52 CDT 2020 | EF-290, LLC<br>7101 Highway 71<br>Austin, TX 78735-8307 | U.S. BANKRUPTCY COURT<br>903 SAN JACINTO, SUITE 322<br>AUSTIN, TX 78701-2450 |
| ASKBR Investments, LLC<br>C/o Andrew Roggensack<br>4115 Grand Ave<br>Western Springs<br>IL 60558-1433 | Andrew Roggensack<br>4115 Grand Ave<br>Western Springs, IL 60558-1433 | BBCC Oak Hill<br>151 W. 6th Street<br>Austin, TX 78701 |
| BBCC Oak Hill, LP<br>c/o Kell C. Mercer<br>Kell C. Mercer, PC<br>1602 E. Cesar Chavez Street<br>Austin, TX 78702-4456 | Berkshire Bank<br>1787 Sentry Parkway West<br>Building 16, Suite 200<br>Blue Bell, PA 19422-2239 | Berkshire Bank<br>c/o Robert L. Barrows<br>Warren, Drugan & Barrows, P.C.<br>800 Broadway, Suite 200<br>San Antonio, Texas 78215-1241 |
| (p)JPMORGAN CHASE BANK N A<br>BANKRUPTCY MAIL INTAKE TEAM<br>700 KANSAS LANE FLOOR 01<br>MONROE LA 71203-4774 | Dave Paul<br>1532 West 93rd Court<br>Crown Point, IN 46307-1881 | Eppen Entertainment Group, LLC<br>12700 Cricoli Drive<br>Austin<br>TX 78739-2135 |
| Greg and Nancy Fernandez<br>19506 Gran Robe<br>San Antonio, TX 78258-3333 | JPMorgan Chase Bank, N.A.<br>s/b/m/t Chase Bank USA, N.A.<br>c/o Robertson, Anschutz & Schneid, P.L.<br>6409 Congress Avenue, Suite 100<br>Boca Raton, FL 33487-2853 | Robert and Connie Jirgl<br>P.O. Box 565<br>Dowagiac, MI 49047-0565 |
| Stacy and Dane Eppen<br>c/o Sprouse Law Firm<br>401 Congress Ave, Ste 1540<br>Austin, TX 78701-3851 | Steven Bass<br>U.S. Attorney's Office<br>903 San Jacinto Blvd., Ste. 334<br>Austin, TX 78701-2449 | U.S. Small Business Administration<br>Chief, AIB<br>409 3rd Street., SW<br>Washington, DC 20416-0011 |
| United States Trustee - AU12<br>United States Trustee<br>903 San Jacinto Blvd, Suite 230<br>Austin, TX 78701-2450 | Herbert C Shelton II<br>Hajjar Peters<br>3144 Bee Cave Rd<br>Austin, TX 78746-5560 | Michael G. Colvard<br>300 Convent St.<br>San Antonio, TX 78205-1316 |
| Todd Brice Headden<br>Hajjar Peters LLP<br>3144 Bee Caves Rd.<br>Austin, TX 78746-5560 | | |

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

| | |
|---|---|
| Chase Bank USA, N.A.<br>Attn: Keith W. Schuck<br>200 White Clay Center Dr.<br>Newark, DE 19711-0000 | End of Label Matrix<br>Mailable recipients    21<br>Bypassed recipients     0<br>Total                  21 |